IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2003 Session

## CATHY M. LOVETT, ET AL. v. JOHN C. KELLEY, ET AL.

Appeal from the Circuit Court for Maury County
No. 9050     Jim T. Hamilton, Judge

No. M2002-01078-COA-R3-CV - Filed May 12, 2003

A woman whose car was struck by another vehicle brought suit against the driver of a van involved in the accident as well as the driver's employer, claiming the collision aggravated her pre-existing back injury. The defendants did not dispute liability, but claimed that the plaintiff's injury was relatively minor. After a hearing, the trial court entered a $100,000 judgment against the defendants. We reverse, because we believe the trial court's award included damages for injuries that were not proximately caused by the defendant's actions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and MARIETTA M. SHIPLEY, SP. J., joined.

Thomas C. Corts and Julie Bhattacharya Peak, Nashville, Tennessee, for the appellants, John C. Kelley and Maury County Board of Education.

Jerry C. Colley, Columbia, Tennessee, for the appellee, Cathy M. Lovett and Carl Lovett.

### OPINION

### I. ACCIDENT AND INJURY

This case arose from a motor vehicle accident which occurred on March 5, 1999. Plaintiff Cathy Lovett's car was stopped at a red light at an intersection in Columbia, Tennessee. Defendant John C. Kelley was approaching the light in a van owned by his employer, the Maury County Board of Education. The street was slippery from rain, and when Mr. Kelley applied his brakes, the van slid into a pickup truck that was stopped directly in front of him, and right behind Ms. Lovett's car. The impact knocked the pickup truck into the rear of the car.

The Lovetts testified that the impact caused some damage to the rear bumper and trunk of their vehicle, although the damage is not visible on photographs. Ms. Lovett did not think she was injured, so after waiting for the police to arrive and take her report, she drove home. The next day she experienced pain in her back and neck. She went to an ambulatory care center, where pain medicine and muscle relaxers were prescribed for her. On April 1, 1999, she was seen by Dr. James Wiesman, an orthopedist who had treated her for lower back pain in 1990, 1997 and 1998.

Dr. Wiesman prescribed pain medicine, a muscle relaxer, an anti-inflammatory and the use of a TENS unit. An MRI of Ms. Lovett's spine taken two months after the accident was read as normal, except for a slightly bulging disc at L5 (the fifth lumbar vertebra). The record indicates that a CT scan done in 1990 showed the same disc to be bulging. Dr. Wiesman attributed the disc distortion to a degenerative condition that he had first diagnosed after the 1990 CT scan. Dr. Wiesman treated Ms. Lovett on and off for four months, and then released her. She returned for several more office visits after being released.

On March 1, 2000, Cathy Lovett and her husband Carl filed suit against Mr. Kelley and the Board of Education. They claimed that Ms. Lovett had become disabled as a result of the accident, and suffered a loss of earning capacity as a result. Ms. Lovett is a registered nurse, but she was unemployed at the time of the accident. The plaintiffs also asked for reimbursement of medical expenses, and damages for loss of enjoyment of life. Mr. Lovett asked for damages for loss of consortium.

On September 1, 2000, Cathy Lovett woke up with excruciating back pain, and went to the emergency room at Maury Regional Hospital. Since Dr. Wiesman was out of the country, she was referred to the Middle Tennessee Bone and Joint Clinic, where she saw Dr. Joseph Frederick Wade. An MRI revealed a severely ruptured disc at L5-S1, and Dr. Wade recommended a lumbar diskectomy. The surgery was performed shortly thereafter. Ms. Lovett incurred substantial medical expenses from the surgery, and missed four weeks of work. She continues to suffer from pain and numbness in her back, and has had to curtail many of her daily activities as a result.

The court conducted a hearing on the Lovetts' complaint on March 11, 2002. The testifying witnesses were Cathy Lovett, Karl Lovett and John Kelley. The depositions of Dr. Wiesman and Dr. Wade were submitted as exhibits. At the conclusion of the proof, the defendants requested that the court make findings of fact and conclusions of law pursuant to Rule 52.01, Tenn. R. Civ. P. The court then took the matter under advisement.

The court filed its Findings of Fact on April 17, 2002. The court found that Cathy Lovett ". . . received serious and permanent injuries as a result of the collision. She received injuries to her neck and back the most serious of which is the injury to her back." The court further found that "both Dr. Wiesman's treatment and surgery by Dr. Wade were related to the accident. These treatments were for injuries to the back, and Dr. Wiesman's also to the neck which were proximately caused by the collision."

In its judgment, filed on April 23, 2002, the court fixed Cathy Lovett's damages at $85,000, including damages for medical expenses, lost wages, and pain and suffering. Carl Lovett's damages for loss of consortium were fixed at $15,000, for a total judgment of $100,000. This appeal followed.

## II. THE QUESTION OF CAUSATION

### A. The Standard of Review

The appellants do not question the trial court's finding that the events of March 5, 1999 caused Ms. Lovett to suffer pain and to incur medical expenses in the months after the accident. Nor do they dispute the proof that the disc rupture she suffered long after the accident has had a significant impact on her life. However, they challenge the court's finding that the 1999 accident was the proximate cause of the back pain that Ms. Lovett experienced eighteen months later, the disc rupture that was discovered at that time, and the surgery performed to correct it.

Findings of fact by the trial court are entitled to a presumption of correctness on appeal, unless the evidence preponderates otherwise. Rule 13(d), Tenn. R. Civ. P. However, since the trial court relied solely upon the written depositions of the two doctors for its findings as to causation, we need not accord those findings the deference that the trial court's findings are entitled to when it has had the opportunity to observe the demeanor of the witness on the stand, and thereby to assess his credibility. *See Fell v. Rambo*, 36 S.W.3d 837 (Tenn. Ct. App. 2000). We must rather make an independent assessment of the documentary proof we review. *Wells v. Tennessee Bd. of Regents* 9 S.W.3d 779 (Tenn. 1999).

### B. Proximate Cause and Causation in Fact

As some of our most notable commentators on the law have observed, questions of proximate cause in negligence cases can be some of the most difficult for the courts to resolve. "There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion." *Prosser and Keeton on Torts*, § 41 at 263 (Fifth Edition 1984). The authors go on to discuss the philosophical problem behind the question of proximate cause: so many different factors may go into causing any single event that,

> "[a]s a practical matter, legal responsibility must be limited to those causes which are
> so closely connected with the results and of such significance that the law is justified
> in imposing liability. Some boundary must be set to liability for the consequences
> of any act, upon the basis of some social idea or policy."

*Prosser and Keeton*, supra at 264.

An absolutely necessary (but not always sufficient) element of proximate cause is that the action complained of be a cause in fact of the injury for which the plaintiff hopes to recover. Cause in fact is usually examined under the "but-for" rule. That is, an act or omission is regarded as a

cause of an event if the particular event would not have occurred without it. *Bennett v. Putnam County*, 47 S.W.3d 438 (Tenn. Ct. App. 2000); *Pichon by Pichon v. Opryland USA, Inc.,* 841 S.W.2d 326 (Tenn. Ct. App. 1992). The testimony of both doctors in this case as to the cumulative nature of back trauma implies that Ms. Lovett's disc herniation does not strictly satisfy the "but-for" rule.

The "but-for" rule does not adequately address the question of causation in fact in some situations, such as when two or more causes combine to bring about an event, and the same event might have resulted from either of those two causes acting alone. To deal with these and other situations, our courts have stated that liability can be imposed if the defendant's action was a "significant factor" in bringing about the plaintiff's injury. *Burgess v. Harley,* 934 S.W.2d 58 (Tenn. Ct. App. 1996); *Haynes v. Hamilton County,* 883 S.W.2d 606 (Tenn. 1994).

But our courts have placed other qualifiers on the question of proximate cause. For example, in *Roberts v. Robertson County Board of Education,* 692 S.W.2d 863, 871 (Tenn. Ct. App. 1985), we stated that "[a] defendant's conduct will be regarded as the proximate cause of the plaintiff's injury if it was the 'procuring,' 'efficient' or 'predominant' cause. (Citations omitted). And in *Pichon by Pichon v. Opryland USA, Inc.,* we stated that the proximate cause of an injury is "the cause that produced the result in continuous sequence and without which it would not have occurred." 841 S.W.2d at 329.

Finally, causation questions are inherently fact-sensitive, and they require that the evidence be reviewed in light of logic, common sense, policy, and precedent. *Wyatt v. Winnebago Industries*, 566 S.W.2d 276, 280 (Tenn. Ct. App.1977). Keeping all these considerations in mind, we must now examine two medical depositions in the record.

### C. The Medical Proof

The plaintiffs' attorney asked Dr. Wade his opinion as to whether the accident was the proximate cause of the problem that resulted in Ms. Lovett's disc herniation and subsequent surgery. The doctor answered that "[i]t would be very hard for me to draw a direct relationship between the accident and her surgery." Upon further questioning, he cited as complicating factors Ms. Lovett's back problems prior to the accident, the results of the post-accident MRI, and the lengthy interval between the accident and the herniation. He went on,

> "Causes of disc herniation and disc degeneration are probably multi-factorial and, you know any activity or any injury that you have over any long period of time can be viewed as playing some role in it. But, you know I can't draw a direct relationship between this accident and the herniation."

Because of Dr. Wade's reluctance to commit himself on the question of causation, the trial court relied entirely upon Dr. Wiesman's testimony for its findings of fact.[1]  Interestingly, Dr. Wiesman's testimony was quite consistent with that of Dr. Wade, except that he described the relationship between the accident and the herniation in a more affirmative way.  In response to questions by Ms. Lovett's attorney, he stated that ". . . the motor vehicle accident did have a bearing on the problem that she had with her low back," and that it was a factor in her overall condition.

In his most positive statement about the effects of the accident, Dr. Wiesman said "I believe that it definitely had an effect on the L-5/S-1 disc and the L-5/S-1 disc space that eventually did result in having the disc rupture to the point where she had to have, as I understand, almost immediate surgery, very quick surgery."

But Dr. Wiesman agreed under questioning by the appellant's attorney that the degeneration of Ms. Lovett's back was a cumulative process, and that all sorts of activities she participated in could have contributed to the injury, such as gardening and lifting patients at work.  Since Ms. Lovett's most severe symptoms occurred after she got out of bed in September, 2000, the attorney asked whether the very act of getting out of bed could have been sufficient to trigger her disc herniation.

The doctor did not directly answer this question, but again discussed the cumulative nature of trauma in back injury.  He drew a distinction between acts that could lead to mild trauma, such as getting out of bed, moderate trauma, such as lifting patients or gardening, and severe trauma, such as might occur in an auto accident.  He did not say, however, that Ms. Lovett suffered a severe trauma from the accident in this case.

While there is some evidence from the deposition of Dr. Wiesman of causation in fact between the accident and Ms. Lovett's disc herniation, when we examine the evidence as a whole, we do not believe it rises to the level of proximate cause.  We note the negative clinical findings as to disc injury shortly after the accident, the lengthy interval between the accident and the herniation, the reluctance of the surgeon who treated the injury to attribute it to the accident, and Dr. Wiesman's testimony as to the inherently cumulative nature of back injury as factors which militate against the trial court's finding.

### III.  A QUESTION OF DAMAGES

In its Findings of Fact, the trial court stated that Ms. Lovett's damages included $18,635.43 for medical expenses, $7,800 for the loss of four weeks of earning capacity after the accident and an additional four weeks of wages after the surgery, and an unspecified amount for her continued pain

---

[1]There was much discussion in this appeal about the significance of the fact that Dr. Wiesman did not use the words "to a reasonable degree of medical certainty" when expressing his opinion about the connection between Ms. Lovett's accident and her subsequent disc herniation.  While failure to use the "magic words" or words of similar import does not render his opinion inadmissible, it does detract from its weight.  *See Vicky Bara, et al v. Clarksville Memorial Health Systems*, Inc., No. M2001-00682-COA-R3-CV (Tenn. Ct. App. Sept. 12, 2002).

and suffering, resulting in a total award of $85,000. Mr. Lovett received $15,000 for loss of his wife's consortium.

In light of our conclusions as to causation, it appears to us that the defendants can be held liable for the damage to Ms. Lovett's car, and for her medical and pharmaceutical expenses up to her last visit with Dr. Wiesman. They can also be held liable for her pain and suffering during the same period. Since Ms. Lovett was unemployed at the time of the accident, she is not entitled to damages for lost wages. Mr. Lovett may also be entitled to damages for loss of consortium during the relevant period of time. *See All v. John Gerber,* 252 S.W.2d 138 (Tenn. Ct. App. 1952).

**IV.**

The judgment of the trial court as to damages is reversed. We remand this cause to the Circuit Court of Maury County for a further hearing on damages in accordance with this opinion. Tax the costs on appeal to the appellees, Cathy Lovett and Carl Lovett.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.